# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DARRELL MILSAP,

      Plaintiff,

      v.

CITY OF CHICAGO, et al.,

      Defendant.

Case No. 16-cv-4202

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Darrell Milsap was employed by the City of Chicago's Department of Streets and Sanitation (DSS) until May 22, 2015, when he resigned (allegedly, involuntarily). He sued the City *pro se* in April 2016 [1], and filed an amended complaint in February 2017 [31]. In May, this Court dismissed Plaintiff's *pro se* complaint for failure to state a claim, but gave him leave to amend [43]. In August, now with the assistance of counsel, Plaintiff filed a second amended complaint (SAC) [49], naming for the first time individual defendants along with the City. The City and the individual Defendants moved to dismiss. *See* [57]. For the reasons explained below, the motion is granted in part and denied in part.

A.   <u>Plaintiff's Amended Allegations</u>

Plaintiff alleges that, after working for DSS for seventeen years, the City wrongfully terminated him because he "came forward to disclose corruption, favoritism, and violations of various laws and regulations by City employees in the court of an official investigation." SAC [49], ¶1. Plaintiff alleges that he "also

endured years of harassment at the hands of [his immediate supervisor, Harold] Irving, and others, due to a disabling back injury." *Id.*, ¶4. He names as Defendants the City of Chicago; Harold Irving (who was the DSS Division 5 Superintendent and Plaintiff's immediate supervisor); Gerald Brown (DSS Foreman of Motor Truck Drivers); Lemuel Austin (Superintendent for the 34th Ward); and Alderman Carrie Austin (who represents the 34th Ward). SAC [49], ¶¶8-11. The SAC alleges two counts of First Amendment retaliation in violation of 42 U.S.C. §1983, one against the City and one against Defendants Irving, Brown, L. Austin, and C. Austin (respectively, counts I and II). The remaining counts are asserted against the City only: disability discrimination and harassment in violation of the Americans with Disabilities Act (ADA) (count III); retaliation in violation of the ADA (count IV); violation of the Illinois Whistleblower Act (count V); and retaliatory discharge (count VI). *Id.*, ¶¶ 75-132. Plaintiff also asserts an indemnification claim (count VII). *Id.,* ¶¶133-35.

With regard to his disability, Plaintiff alleges that he sustained a back injury in the workplace in 2006 and has suffered from disabling back pain ever since. SAC [49], ¶15. As a result, Plaintiff was assigned a "light duty" restriction, which allowed Plaintiff to avoid having to drive long distances or perform other duties that caused him chronic back pain. *Id.*, ¶17. From 2006 until the end of his employment, Plaintiff was also granted intermittent leave for physical therapy. *Id.*, ¶18. Plaintiff alleges that Defendant Irving created a hostile work environment and harassed Plaintiff because of his disability by: (a) disciplining Plaintiff for

taking approved leave to treat his disability; (b) damaging Plaintiff's property on his office desk; (c) repeatedly verbally abusing Plaintiff in front of other City employees; (d) upon information and belief, disparaging Plaintiff to other City employees; (e) forcing Plaintiff to perform work outside of his light duty restrictions and threatening to discipline Plaintiff if he did not perform such work; and (f) using derogatory names such as "broke-back" or "cripples". SAC [49], ¶20. Plaintiff also alleges that other City employees "forced Plaintiff to perform work outside of his light duty restrictions and verbally abused Plaintiff due to his disability." *Id.*, ¶23. He alleges that he filed numerous complaints with the City regarding Irving's harassment, but the City failed to address the issue; and he later endured additional harassment in retaliation for making the complaints with the City. *Id.*, ¶¶25-27.

Plaintiff also alleges that on December 10, 2012, he was involved in a car accident while performing a mail run for the City on Irving's orders. *Id.,* ¶28. Kenneth Austin, who Plaintiff alleges is Defendant Carrie Austin's son and Defendant Irving's cousin, was with Plaintiff at the time of the accident. *Id.*, ¶¶30, 34, 44. Kenneth Austin did not have a valid driver's license but was nonetheless driving. *Id.* ¶36. After their vehicle was rear-ended, Plaintiff called Defendant Brown (the Driver Foreman); Brown told Plaintiff to call Irving, and Irving told Plaintiff to tell the police. *Id.,* ¶¶38-39. Plaintiff alleges that, when they went to the police station, Lemuel Austin (Kenneth Austin's brother and then Superintendent for the 34th Ward) and Irving "pressured Plaintiff to tell the police that he was the

driver of the vehicle." *Id.,* ¶45. Irving told Plaintiff that he needed to "take care of Kenny" and that Kenneth Austin "could not 'go down for this.'" *Id.* Plaintiff alleges that he told Irving he "would not play a role in falsifying information and lying to the police." *Id.*, ¶46. Irving then told Plaintiff that if he did not tell the police he was driving, Plaintiff "would 'go down for this' and lose his job." *Id.,* ¶47. Plaintiff then falsified the accident report at the police station, stating that he was driving at the time of the accident. *Id.*, ¶49.

Plaintiff alleges that Carrie Austin subsequently told him that he needed to "stick to the story" and "continue to say that he was driving during the accident 'or else.'" *Id.*, ¶53. In April 2013, when interviewed as part of an investigation by the City's Office of the Inspector General (OIG), Plaintiff again stated that he was the driver at the time of the December 2012 accident. *Id.*, ¶¶55-57. In May, however, during a second interview, Plaintiff disclosed that Kenneth Austin had actually been driving at the time of the accident; Plaintiff alleges that in making this statement, he "blew the whistle" and "acted against his own self-interest to tell the truth." *Id.*, ¶58. Following this disclosure, Plaintiff allegedly suffered retaliation, including verbal harassment, abuse, and threats to his job security. *Id.*, ¶¶60-63.

Plaintiff alleges that the OIG closed its investigation in late March 2015, and the City fired him on May 17, 2015. *Id.*, ¶65. Plaintiff alleges that City Commissioner Charles Williams "told Plaintiff that because he 'didn't stick to his story' and 'broke the law,' he was being discharged." *Id.* Plaintiff was given the option to resign to preserve certain benefits, and he exercised that option. *Id.*, ¶66.

Plaintiff later learned that Carrie Austin told the City that if her son was going to be fired, Plaintiff also needed to be fired; this "led to Plaintiff's termination." *Id.*, ¶67.

## B.   Legal Standard

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). To survive a motion to dismiss, a complaint must first provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice" of what the claim is "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Additionally, the complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). That is, the allegations must raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The "amount of factual allegations required to state a plausible claim for relief depends

on the complexity of the legal theory alleged," but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). In evaluating the complaint, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of Plaintiff. *Iqbal*, 556 U.S. at 678. The Court need not, however, accept legal conclusions or conclusory allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

C.    Discussion & Analysis

Defendants have moved to dismiss all of the claims asserted in the SAC. This Court considers the sufficiency of Plaintiff's allegations below.

1.    Plaintiff's First Amendment Retaliation Claims (Counts I and II)

The First Amendment protects a public employee's "right to speak as a citizen about matters of public concern under certain circumstances." *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 508-09 (7th Cir. 2007) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). To make out a First Amendment retaliation claim, a public employee like Plaintiff "must first demonstrate that his speech was on a matter of public concern." *McGreal v. Ostrov*, 368 F.3d 657, 672 (7th Cir. 2004). Second, he must show that "his speech played at least a substantial part in his employer's decision to take an adverse employment action against him." *Id.* If Plaintiff carries his burden on these two elements, Defendants may prevail by proving that the government's interest as an employer in efficiently providing

government services outweighs Plaintiff's First Amendment interests, or that they would have disciplined Plaintiff even in the absence of his speech. *Id.* (citing *Gustafson v. Jones,* 290 F.3d 895, 906 (7th Cir. 2002)).

Defendants argue that Plaintiff's First Amendment retaliation claim against the City fails because Plaintiff cannot allege that he spoke as a private citizen and cannot allege that he spoke on a matter of public concern. Whether a government employee's speech "addresses a matter of public concern depends upon 'the content, form, and context [of the speech] as revealed by the whole record.'" *McGreal*, 368 F.3d at 672-73 (7th Cir. 2004) (quoting *Gustafson*, 290 F.3d at 906-07; *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). This Court must also consider "the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" *Smith v. Fruin*, 28 F.3d 646, 651 (7th Cir. 1994).

Plaintiff claims that his "speech about issues of nepotism and favoritism of a City Alderman's family member addressed matters of public concern." Response [59], p. 5. But "a public employee who 'reports official misconduct in the manner directed by official policy, to a supervisor, or to an external body with formal oversight responsibility . . . speaks pursuant to [his] official duties and [his] speech is unprotected by the First Amendment.'" *Rose v. Haney*, No. 16-CV-5088, 2017 WL 1833188, at *5 (N.D. Ill. May 8, 2017) (citing *Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 904 (N.D. Ill. 2016)). Similarly, an employee who "reports misconduct

affecting an area within his responsibility (even when not strictly required to report it), also speaks pursuant to his official duties." *Id.* (citing *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 539 (7th Cir. 2016)). An employee does not speak "pursuant to his official duties when he either 'testifies regarding misconduct to a jury or grand jury, or reports misconduct outside established channels or in violation of official policy.'" *Id.* (quoting *Spalding*, 186 F. Supp. 3d at 904). Here, Plaintiff's alleged speech falls within the former category.

Although a public employee's criticism of a government employer's policies can be protected speech, *e.g. Perry v. Sindermann*, 408 U.S. 593 (1972), and "bringing to light actual or potential wrongdoing during the provision of public services obviously is in the public's interest," *e.g., Connick*, 461 U.S. at 148, the allegations here fail to fall within this category of speech. Plaintiff argues that his "speech" disclosed an "unlawful cover-up of the December 2012 accident" and related to "issues of nepotism and favoritism of a City Alderman's family member." Response [59], p. 5. Yet nowhere in his complaint does Plaintiff allege that he disclosed anything about nepotism or favoritism or an illegal cover-up. Instead, he alleges that he lied (under pressure) and said he was driving a City vehicle when, in fact, Kenneth Austin was driving the car, and he alleges that he then revealed his lie.

Specifically, his allegations concerning his disclosure are as follows:

> 55. In early 2013, the City's Office of the Inspector General ("OIG") initiated an investigation into suspected preferential treatment of K. Austin on behalf of the City. As part of this investigation, the OIG investigated the December 2012 accident.

56. In the course of the investigation, Plaintiff gave an interview on April 24, 2013 and again on May 29, 2013.

57. During his April 24, 2013 interview, Plaintiff testified that he was the driver in the December 2012 accident. He did so because he felt pressured to "stick to the story" or risk losing his job.

58. In his May 29, 2013 interview, Plaintiff disclosed that he had not in fact been the driver and that K. Austin was actually the employee driving the vehicle at the time of the accident. Plaintiff voluntarily gave this second interview in order to clear his name and set the record straight. Plaintiff "blew the whistle" and acted against his own self-interest to tell the truth.

59. Plaintiff testified in this interview that he felt pressured by both Irving and Brown to cover for K. Austin and say that he was the driver.

SAC [49], ¶¶55-59. As currently alleged, Plaintiff was not engaging in public or protected speech. Plaintiff's allegations demonstrate that he lied under pressure, not to criticize a City policy or expose corruption, but to save his job; he further admits that he then told the truth, not to criticize a City policy or expose corruption, but rather "to clear his name and set the record straight." *Id.*, ¶¶57-58. What's more, when he did tell the truth, he did so in a private interview with the City's OIG, which was otherwise already investigating Kenneth Austin.

When a plaintiff's speech is "plainly individual in focus," the fact that a portion of that speech could be of public concern will not be enough to "transform the plaintiff's speech into a matter of public concern." *Friend v. Lalley*, 194 F. Supp. 2d 803, 812 (N.D. Ill. 2002). *See also Smith v. Fruin*, 28 F.3d 646, (7th Cir. 1994) (raising an issue for purely personal reasons in a largely private setting does not amount to speech on a matter of public concern protected by the First Amendment).

Here, as alleged in the SAC, Plaintiff's "speech" remained individual in focus and was motivated by a desire to save his job – no small thing, but not a matter of public concern. The City may very well have engaged in the alleged nepotism and favoritism with respect to Kenneth Austin, but Plaintiff does not allege that he spoke out to reveal the problem. Accordingly, Plaintiff's "speech" was not speech on a matter of public concern, and it is not entitled to First Amendment protection, as currently alleged.

    2.    <u>Plaintiff's ADA Claims (Counts III and IV)</u>

The ADA prohibits an employer from discriminating against a qualified individual with a disability because of his disability. 42 U.S.C. §§ 12203(a), (b), 12112(a). To state a claim of disability discrimination under the ADA, a complaint must allege that: (1) the plaintiff has a disability within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of her disability. *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). The complaint must also allege "a specific disability." *Id*. at 345-46 ("The defendant in a disability discrimination suit does not have fair notice when the plaintiff fails to identify his disability."). Defendants argue that Plaintiff has failed to allege a disability and failed to allege an adverse employment action. The Court disagrees on both counts.

With regard to his claim for violation of the ADA, Plaintiff alleges that he "is a disabled individual within the meaning of the ADA"; "is qualified to perform the

essential functions of his job with or without a reasonable accommodation"; he "suffered harassment and discrimination because of his disability, which resulted in a workplace so hostile and abusive that it altered the terms of his employment." SAC [49], ¶¶100, 102-103. The Court agrees with Defendants that these allegations are nothing more than "[t]hreadbare recitals of the elements of [the] cause of action" and do not by themselves suffice. *See Iqbal*, 556 U.S. at 678. But Plaintiff's complaint contains more.

Plaintiff also alleges that: he was employed by the City for approximately 17 years before this incident; he suffers from disabling back pain as a result of a workplace injury in 2006 and has undergone surgery and other long-term treatment to address his disability; his disability impairs his ability to drive long distances, perform manual labor, or walk or sit for too long without chronic pain; because of his disability, DSS had assigned him to a "light duty" position; and from 2006 forward, the City allowed Plaintiff to take intermittent leave for physical therapy sessions. SAC, ¶¶14-18. From these allegations, one can reasonable infer that Plaintiff has a disability within the meaning of the ADA, and that he was otherwise qualified to perform the essential functions of his job either with or without reasonable accommodation. The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual," 42 U.S.C. §12102(1)(A), and Plaintiff has alleged that his back injury–a physical impairment–substantially limited him in one or more major life activities. Additionally, the fact that the City kept Plaintiff around for the better part of two

decades suggests that he was, in fact, performing the essential functions of his job, first without, and then with, an accommodation.

Defendants also argue that Plaintiff failed to allege any adverse employment action. Based upon the record, this Court rejected this argument last time, and it does so again. Plaintiff alleges that he was terminated, and there is no question that termination is an adverse employment action. *E.g., Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011) (noting that termination is one recognized category of adverse employment actions for purposes of the federal antidiscrimination statutes). Plaintiff also alleges that, after being fired, he was given the option to formally characterize his departure as a resignation to preserve certain benefits. But, according to the SAC, the reclassification of his departure from a termination to a resignation occurred after the fact. For present purposes, these allegations are enough. Plaintiff need not prove his case at this stage; he need only allege facts that, if accepted as true, state a plausible ADA claim. *Iqbal*, 556 U.S. at 678. As far as the prima facie elements of his claim are concerned, he has done so.

Plaintiff also alleges retaliation in violation of the ADA, and Defendants challenge this claim as well. To prevail on a claim for retaliation under the ADA, Plaintiff "must prove: (1) that he 'engaged in statutorily protected activity'; (2) that he 'suffered an adverse employment action'; and (3) that 'there was a causal connection between the two.'" *Pinkston v. City of Chicago*, No. 13 C 7399, 2017 WL 4340155, at *10 (N.D. Ill. Sept. 29, 2017) (quoting *Greengrass v. Int'l Monetary Sys.*

*Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015); *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)). Plaintiff alleges that: he "is a disabled individual within the meaning of the ADA"; he "suffered harassment and discrimination because of his disability"; he "engaged in protected activity by filing complaints with the City regarding the harassment"; and the City "terminated Plaintiff's employment in retaliation for filing multiple complaints regarding their harassment and discrimination towards him." SAC [49], ¶¶109, 112, 114-115. Plaintiff's allegation that he filed complaints with the City regarding the harassment satisfies the first element; such complaints are statutorily protected conduct under the ADA. *E.g., Freelain v. Vill. of Oak Park*, No. 13 C 3682, 2014 WL 148739, at *8 (N.D. Ill. Jan. 15, 2014). With regard to the adverse employment action element, Defendants argue that Plaintiff "cannot plead a 'forced resignation' as a retaliatory 'adverse action.'" Motion to dismiss [57], p. 13. As explained above, however, Plaintiff alleges that he was terminated. SAC, ¶115. And he alleges that the termination stemmed from the complaints he filed regarding the harassment and discrimination he suffered because of his disability. SAC, ¶¶112, 115.

Having said all of this, one glaring problem with Plaintiff's ADA claims remains as alleged in the SAC: in addition to alleging that he was fired because of his disability and his complaints about disability discrimination and harassment, Plaintiff also alleges that he was fired because he failed to "take care of Kenny." Such allegations appear throughout the complaint. *See, e.g.,* [49], ¶1 ("After seventeen years of dedicated service to the City of Chicago's Department of Streets

and Sanitation, the City wrongfully terminated Plaintiff Darrell Milsap's employment because he came forward to disclose corruption, favoritism, and violations of various laws and regulations by City employees in the course of an official investigation."); ¶3 ("In direct response to Plaintiff's disclosure and exercise of his rights, the City terminated Plaintiff's employment because he did not 'stick to the story.'"); ¶65 ("On May 17, 2015, shortly following the close of the OIG investigation, the City terminated Plaintiff's employment . . . because he 'didn't stick to his story' and 'broke the law'"); ¶80 ("The City terminated Plaintiff's employment in retaliation for exercising his First Amendment Rights in participating in the OIG investigation and providing testimony on a matter of public concern."); ¶81 ("The City would not have terminated Plaintiff's employment if he had not exercised his First Amendment Right to free speech during the course of the OIG investigation."); ¶91 ("The City, Irving, Brown, L. Austin and Alderman Austin terminated Plaintiff's employment in retaliation for exercising his First Amendment Rights by participating in the OIG investigation and providing testimony on a matter of public concern."); ¶92 ("The City would not have terminated Plaintiff's employment if he had not exercised his First Amendment Right to free speech during the course of the OIG investigation.").

In *Serwatka v. Rockwell Automation, Inc.*, the Seventh Circuit acknowledged that Title VII's mixed-motive provision does not apply to claims under the 2008 version of the ADA. 591 F.3d 957, 962 (7th Cir. 2010). It is, however, an open question in this Circuit as to whether the 2008 amendments to the ADA opened the

door to such claims.  *See Silk v. Bd. of Trustees, Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 705-06 (7th Cir. 2015).  The Seventh Circuit, having not yet had occasion to decide the question, continues to employ the "but for" causation standard, which would require Plaintiff to show that the City would not have fired him but for his actual or perceived disability; proof of mixed motives will not suffice. *Serwatka,* 591 F.3d at 962.  Under this controlling standard, the above allegations claiming a "mixed motive" for Plaintiff's termination are fatal to Plaintiff's ADA claims.

Because Plaintiff's allegations clearly suggest "mixed motives," the Court must dismiss the ADA claims for failure to state a claim.  Taking Plaintiff's allegations as true, he cannot show that he would not have been terminated but for his disability.

3.   Plaintiff's Whistleblower Claim (Count V)

The Illinois Whistleblower Act (IWA) prohibits an employer from retaliating against an employee who discloses: (a) "information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation"; or (b) "information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."  740 Ill. Comp. Stat. Ann. 174/15.

Defendants argue that Plaintiff's IWA claim fails because he has not alleged that he disclosed any illegal activity. Here, simply identifying the true driver of a City vehicle hit from behind does not, by itself, unearth any violation of federal or state law, or any rule or regulation. Additionally, although nepotism and favoritism could potentially violate the Shakman Decree or other ordinances governing City hiring, Plaintiff did not expose or explain the unlawfulness of the fact that the City hired the relatives of a sitting Alderman. Indeed, he seems to have said nothing about the fact that the City apparently also hired Carrie Austin's other son. Instead, even though no one apparently lied under oath but him, Plaintiff claims specifically that City employees pressured him to lie about who was driving the City vehicle. Consequently, his alleged disclosure does, in fact, implicate illegal activity and clear violations of Illinois and federal law – namely, subornation of perjury, obstruction of justice, and aiding/abetting the filing of a false police report (as well as Kenny Austin's own traffic violation for driving a City vehicle without a valid license).

Defendants argue that, even if Plaintiff's allegations implicate alleged illegal activity, his IWA claim still fails, because Plaintiff does not allege that he reported any illegal activity to anyone other than the OIG, and the OIG remains a City entity. Generally, under the IWA, there is "no cause of action where an employee reveals information only to his or her employer." *Huang v. Fluidmesh Networks, LLC*, No. 16-CV-9566, 2017 WL 3034672, at *3 (N.D. Ill. July 18, 2017) (citing *Zelman v. Hinsdale Twp. High Sch. Dist. 86*, 2010 WL 4684039, at *2 (N.D. Ill. Nov.

12, 2010)); *Cunliffe v. Wright*, 51 F. Supp. 3d 721, 740 (N.D. Ill. 2014)). The IWA specifically defines "employer" to mean "an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, including a political subdivision of the State; *a unit of local government*; a school district, combination of school districts, or governing body of a joint agreement of any type formed by two or more school districts; a community college district, State college or university, or any State agency whose major function is providing educational services; *any authority including a department, division, bureau, board, commission, or other agency of these entities; and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees***.**" 740 Ill. Comp. Stat. Ann. 174/5 (emphasis added). Thus, as a practical matter, since Plaintiff reported the alleged illegal activity to the OIG alone, this Court agrees that he only reported the wrongdoing internally to his own employer. But a careful reading of the statute shows that the point remains irrelevant under the circumstances presented here.

Both the statutory text and "legislative intent" of the IWA confirm that the Illinois General Assembly intended the statute to "apply where an employee takes concerns about work place violations to the authorities or a law enforcement agency." *Zelman v. Hinsdale Twp. High Sch. Dist. 86*, No. 10 C 00154, 2010 WL 4684039, at *2 (N.D. Ill. Nov. 12, 2010) (citing *Clark v. Moline Pub. Library*, No. 09-4054, 2010 WL 331726, at *10 (C.D. Ill. Jan. 26, 2010); *Riedlinger v. Hudson Respiratory Care, Inc.*, 478 F.Supp.2d 1051, 1055 (N.D.Ill. 2007)). In such

instances, the plain language of the statute then precludes an "employer" from retaliating "against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 Ill. Comp. Stat. Ann. 174/15. Significantly, nowhere in the text of the statute did the General Assembly exempt an employee who reports to a government or law enforcement agency when such entity also happens to be the employee's employer; nor does the statute require that the employee report to a government or law enforcement agency that is not his employer. Indeed, given the legislative purposes motivating the statute, there would be no reason to rewrite the text and impose such conditions. Here, Plaintiff alleges that he reported alleged illegal activity to a governmental or law enforcement agency: the OIG. The simple fact that the OIG also happens to be an agency of Plaintiff's employer does not exempt his claim under a plain construction of the statute.

*Huang* is not inconsistent with the Court's interpretation. The plaintiff in that case worked for a private company, rather than a government or law enforcement agency, and the plaintiff only reported the alleged illegal activity to the wrongdoer and the wrongdoer's supervisor. 2017 WL 3034672, at *3. As such, the informal disclosure to the private employer failed to satisfy the statutory requirements. 740 Ill. Comp. Stat. Ann. 174/15.

To be sure, there is some legal authority for Defendants' position that disclosure to the employer alone is not enough to trigger the statute's protections.

In *Zelman*, the court noted that, under the IWA, "there is no cause of action where an employee reveals information only to his or her employer," and it cited a number of cases to support that proposition, including *Clark v. Moline Pub. Library*, No. 09–4054, 2010 U.S. Dist. LEXIS 6143, *10, 2010 WL 331726 (C.D.Ill. Jan. 26, 2010) and *Riedlinger v. Hudson Respiratory Care, Inc.*, 478 F.Supp.2d 1051, 1054 (N.D.Ill. 2007). *Zelman*, 2010 WL 4684039, at *2. The court determined that, in light of the "legislative history of the IWA, which indicates that the legislative intent was that the statute would apply where an employee takes concerns about work place violations to the authorities or a law enforcement agency," reporting to "numerous school officials," an "assistant principal," a "union representative," and "Superintendent Wahl" was not sufficient. The court in *Zelman* did not consider what would happen if an IWA plaintiff actually worked for a municipality and reported to a law enforcement agency. Nor did the court consider or discuss the factual context within which the cited rule derived. *Riedlinger*, like *Huang*, involved a plaintiff who worked for a private company and reported alleged wrongdoing solely to internal corporate management. 478 F.Supp.2d at 1054-55. Thus, as a practical matter, the plaintiff in *Reidlinger* failed to satisfy the plain language of the IWA, not because he failed to report wrongdoing to a law enforcement agency other than his employer, but because he failed to report wrongdoing to a law enforcement agency.

In *Clark* and in *Cunliffe* the plaintiffs worked for governmental agencies and reported allegedly illegal activity to governmental agencies, and so a bit more

19

discussion is required. The plaintiff in *Clark* worked for the City of Moline and the Moline Public Library; she reported alleged illegal activity to the Library's Board of Trustees and to the City's Human Resources Department. *Clark*, 2010 WL 331726, at *4. Relying on *Reidlinger*, the court held that the plaintiff had "done nothing more than report the alleged misconduct to her employer" and, therefore, dismissed her IWA claim. Curiously, the court did not consider or discuss the factual distinctions between the employers and the reporting entities in the two cases; nor did the court explain why it was reading an additional element into the statute (that the agency receiving the report must be an agency other than the employer).

The plaintiff in *Cunliffe*, like Plaintiff here, worked for an agency of the City (the Board of Education) and reported alleged illegal activity to the Board of Education's Inspector General. The court in *Cunliffe* initially rejected the plaintiff's IWA claim because the statute of limitations had run. 51 F.Supp.3d at 731-32. The court nonetheless went on to consider in dicta whether the allegations would have stated a claim if timely, and determined that they would not. In so doing, the court noted that the IWA "prohibits employers from retaliating 'against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule or regulation' and "Cunliffe has not alleged that she reported the information to a government official or law enforcement agency; rather, she alleges only that she reported it to Wright and the [Board's] Inspector General, both of whom are Board employees." 51 F. Supp. 3d at 740 (citing 740

ILCS 174/15(b); *Stiles v. Int'l BioResources, LLC,* 726 F.Supp.2d 944, 950 (N.D. Ill.

2010)). Interestingly, *Stiles*, upon which the court relied, like *Huang* and *Zelman,*

involved an employer that was not a governmental or law enforcement agency and a

plaintiff who reported alleged wrongdoing only internally. Yet the *Cunliffe* court

did not consider the distinction. Nor did the court explain its reasons for reading an

additional element into the statute (that the reporting agency be an agency other

than the employer).

In *Brame v. City of North Chicago*, a lieutenant with the North Chicago police

department sued for violation of section 15(b) of the Illinois Whistleblower Act

alleging that the chief of police retaliated against him for disclosing alleged illegal

activity to the mayor of the city. 955 N.E.2d 1269 (Ill. App. Ct. 2011). On summary

judgment, the Illinois Appellate Court considered whether reporting to the mayor

(unquestionably a government or law enforcement agency) was sufficient to satisfy

the statute. *Id.* at 1271-72. The court held that it was:

> when plaintiff informed the mayor about the alleged
> misconduct of the chief, plaintiff disclosed the information
> to a government or law-enforcement agency. In fact,
> plaintiff brought his concerns to one of the highest
> government or law-enforcement officials in the
> jurisdiction where the suspected illegal conduct took
> place. That plaintiff disclosed the alleged criminal activity
> to his own employer, who also happens to be the head of a
> "government or law enforcement agency," does not change
> the outcome. The result is dictated by the plain language
> of the Act.

*Id.* at 1271. In reaching this conclusion, the court distinguished cases in which

several federal courts interpreting section 15(b) had found that reporting within an

employee's own company falls outside the IWA. For the most part, the court determined, as this Court did above, that this line of cases makes perfect sense when the employer is not itself a government or law enforcement agency. *Id.* at 1272. In cases where the principle is invoked to bar an employee whose employer *is* a government or a law enforcement agency, the result may be chalked up to not having an opportunity to "fully analyze the issue." *Id.* As the *Brame* court noted, that may have been the case in *Clark v. Moline Public Library*, No. 09–4054, 2010 WL 331726, at *4 (C.D.Ill. Jan. 26, 2010), which, like *Cunliffe*, relied upon opinions that found internal reporting alone insufficient in cases that did not involve a governmental employer.

In holding that reporting to a governmental or law enforcement agency satisfies the IWA even where that agency is the employer, the *Brame* court noted that it is "not that a municipal employee like plaintiff could not have reported to his own governmental employer or that a municipal employee must report to an outside source; the statute requires an employee only to report to a government or law-enforcement agency, and no exceptions apply if a government or law-enforcement agency is also the employer. Had the legislature intended that the Act not apply to reports made to an employee's own government or law-enforcement agency employer, it certainly would have included such a limitation." *Id.* at 1272-73. This Court agrees with this plain language analysis.

This plain reading also furthers the purpose of the statute, especially here, where the plaintiff alleges that he reported alleged wrongdoing to an agency like

the City's OIG, which is specifically charged with promoting integrity and rooting out corruption and waste within the affairs of City government. In this sense, the OIG functions more like a law enforcement agency than a municipal human resources department (as in *Clark*).

In sum, Plaintiff has alleged that he reported what he perceived to be illegal conduct to the OIG, and that is enough to state a claim under section 15(b) of the IWA. That the agency also happens to be an agency of his employer does not exempt him from the statute. Plaintiff's IWA claim may proceed.

### 4. Plaintiff's Retaliatory Discharge Claim (Count VI)

In Count VI, Plaintiff alleges retaliatory discharge. More specifically, he alleges that, during the course of an investigation by the OIG, Plaintiff disclosed a practice of corruption, nepotism, and favoritism in the DSS; as a result, he was wrongfully terminated "which is a violation of clearly mandated public policy." SAC, ¶129-31. Defendants argue that these allegations fail to state a claim because Plaintiff was not discharged (he resigned) and because Plaintiff admits he lied to police, lied to the City and lied to the OIG the first time around.

Under Illinois law, to state a "valid retaliatory discharge cause of action, an employee must allege that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009). Although Illinois law does not define the "precise limits of clearly mandated public policy, the tort of retaliatory discharge has only been allowed in two instances: '[1] where an employee is discharged for filing, or in anticipation of filing,

a claim under the Workers' Compensation Act . . . or [2] where an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as whistleblowing.'" *Smith v. MGM Resorts Int'l*, No. 16 CV 07215, 2016 WL 7049062, at *5 (N.D. Ill. Dec. 5, 2016) (quoting *Michael v. Precision Alliance Gr., LLC*, 21 N.E.3d 1183, 1188 (Ill. 2014) and citing *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 941 (7th Cir. 2002)). In light of the Court's finding above that Plaintiff has state a claim for violation of the Illinois Whistleblower Act, Plaintiff may proceed on this claim as well.

5. Plaintiff's Indemnification Claim (Count VII)

Finally, Defendants argue that Plaintiff's indemnification claim must be dismissed because there is no basis to hold the individual defendants liable, and thus no basis for indemnification. Given the analysis above, this Court agrees. Plaintiff's Whistleblower Act claims (the only claims to survive the motion to dismiss) are asserted against the City of Chicago, and not the individual defendants. Accordingly, at this point there is no basis for indemnification.

Conclusion

For the reasons explained above, Defendants' motion to dismiss [57] is granted in part and denied in part. The motion is granted as to Plaintiff's First Amendment, ADA, and indemnification claims. The motion is denied as to Plaintiff's Illinois Whistleblower Act and retaliatory discharge claims. To the extent Plaintiff is able (consistent with his obligations under Rule 11) to cure the deficiencies noted above, he may file an amended complaint by February 9, 2018.

The case is set for a status hearing on February 13, 2018 at 9:45 a.m. in Courtroom 1203.

Dated:  January 19, 2018

ENTERED:

John Robert Blakey
United States District Judge